IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES RADEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 3:24-cv-407-ECM |
| | ) | [WO] |
| LEE CRISP, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

On June 12, 2024, Deputy Lee Fleming ("Fleming") and Sergeant Lee Crisp ("Crisp") (collectively, "the Defendants"), members of the Lee County Sheriff's Office, with assistance from "a German Shepherd named Junior[,]" arrested James Raden ("Raden") in Phenix City, Alabama. (Doc. 19 at 2–5, paras. 7–18).[1] Raden describes the encounter with the Defendants and Junior as a "chaotic confrontation . . . that left [him] with severe canine bite injuries to his shoulder [and] arms, and a broken hand." (*Id.* at 2–3, para. 7).

Raden's second amended complaint ("Operative Complaint") asserts two counts, each brought pursuant to 42 U.S.C. § 1983. In Count I, Raden alleges that Fleming used excessive force in violation of the Fourth and Fourteenth Amendments when he released Junior's leash, resulting in the canine attack. (*Id.* at 7–9, paras. 26–32). In Count II, Raden

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

alleges that Crisp's actions were "objectively unreasonable and with deliberate indifference by failing to intervene" during the canine attack. (*Id.* at 9–10, para. 34). The Defendants separately moved to dismiss Raden's Operative Complaint, invoking qualified immunity. (Docs. 23, 29).[2] The motions to dismiss are fully briefed. (*See* docs. 24, 26, 27, 30, 32, 33). After careful consideration of the motions, briefs, and applicable law, the Court finds that Fleming's motion to dismiss is due to be GRANTED in part and DENIED in part and Crisp's motion to dismiss is due to be GRANTED.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience

---

[2] Raden separately responded to Crisp's and Fleming's motions to dismiss. (*See* docs. 26, 32). Raden's responses are nearly identical, and the Court cannot detect any substantive differences between them.

2

and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## IV. FACTS[3]

On the evening of June 12, 2024, Raden—subject to an outstanding arrest warrant—was standing in the backyard of his Phenix City, Alabama residence. (Doc. 19 at 3, paras. 8–9). A vehicle arrived on scene, and an individual exited the vehicle and yelled "Police." (*Id.* at 3, para. 10). "Once the officers came into view . . . Raden . . . voluntarily got down onto the ground on his back and put his hands up with his palms open . . . [and] submitted to the authority of the officers."[4] (*Id.* at 3, para. 11). Raden was unarmed. (*Id.*). Two of

---

[3] At the motion to dismiss stage, the Court "must view the [Operative] [C]omplaint in the light most favorable to [Raden] and accept all of [Raden]'s well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citation omitted).

[4] Raden's Operative Complaint states, "Raden is unable to name all of the officers involved" in his June 12, 2024 arrest. (Doc. 19 at 3, para. 7).

the officers, Fleming (alongside his canine partner, Junior) and Crisp were in Raden's backyard during his arrest. (*Id.* at 3–4, paras. 12–13).[5]

Fleming stood "approximately" ten to fifteen feet away from Raden. (*Id.* at 4, para. 13). Fleming "turned his flashlight onto . . . Raden, who was . . . laying on the ground with the palms of his hands open and in the air[.]" (*Id.*). Fleming called out to Crisp, who later walked over and "made a hushed comment" to Fleming. (*Id.* at 4, para. 14). After Crisp's comment, Fleming "dropped the leash he was using to restrain" Junior. (*Id.*). Raden alleges that the Defendants watched Junior attack Raden's shoulder "as he lay on the ground" causing him to "roll[] onto his stomach and put his hands behind his back to allow the Officers to handcuff him." (*Id.* at 4–5, para. 17). Raden further claims that after he rolled onto his stomach, Junior attacked him a second time by biting his "tricep as he lifted his arm to protect his neck from the dog's bite." (*Id.* at 5, para. 18). Raden later received medical care at a local hospital. (*Id.* at 5, para. 20). Raden's shoulder and right hand were injured during his arrest. (Doc. 19 at 5–6, paras. 21, 23). Additionally, Raden alleges he suffers extreme emotional and physical pain resulting from Junior's attack. (*Id.* at 6, para. 25).

## V. DISCUSSION

Crisp and Fleming argue that dismissal is proper by invoking qualified immunity. (Doc. 24 at 5–18; doc. 30 at 5–16). The Defendants argue qualified immunity shields them

---

[5] Raden's version of events suggests that Crisp entered the backyard after Fleming. (*See* doc. 19 at 4, para. 14) ("Once . . . Fleming observed . . . Raden on the ground, he called out 'Sarg', and subsequently Sergeant Crisp came into . . . Raden's view.").

from liability for two primary reasons: (1) Raden's factual allegations are based on "information and belief" and therefore fail to state a constitutional violation (doc. 24 at 7–14; doc. 30 at 8–14) and (2) Raden fails to demonstrate a violation of clearly established law (doc. 24 at 17–18; doc. 30 at 15–16).

First, the Court will assess the Defendants' challenge to Raden's factual allegations. Second, the Court will evaluate Raden's Fourth Amendment and Fourteenth Amendment claims against Fleming. (Doc. 19 at 7–9, paras. 26–32). Finally, the Court will review Raden's "deliberate indifference / failure to intervene" claim against Crisp. (*Id.* at 9–11, paras. 33–40).

### A.   Raden's "Information and Belief" Allegations

Raden's Operative Complaint states that his factual allegations "are asserted upon" Raden's "information and belief." (*Id.* at 2, para. 7). The Defendants seize on this language, arguing that Raden's allegations "are not entitled to any presumption of . . . truth. The court is not required to assume their veracity." (Doc. 24 at 10; doc. 30 at 10–11). The Court is not persuaded.

The Defendants correctly note that courts "do not have to take as true" conclusory allegations made "upon information and belief." *See, e.g.*, *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551, 557).[6] But many of Raden's allegations are not conclusory. Rather, Raden's Operative Complaint "contain[s] sufficient

---

[6] Raden's invocation of "upon information and belief" is not without consequence. For example, Raden alleges that "Fleming nor any other officer at the scene had knowledge or reliable information that . . . Raden was committing or had committed any violent or serious crime[.]" (Doc. 19 at 8, para. 28(d)). The Court does not have to take as true Raden's conclusory allegations regarding the Defendants' knowledge of his previous criminal history.

factual matter" that "allows the [C]ourt to draw the reasonable inference that the [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Raden's factual allegations paint a picture, based on his *first-hand experience*, that Fleming's actions—and—Crisp's inaction make liability plausible. *See id.* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Raden cites to sufficient specific facts concerning the Defendants' conduct that makes liability plausible. This is more than enough to "raise a right to relief" against Fleming and Crisp "above the speculative level" and "nudge[] [Raden's] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 555, 570. Thus, the Defendants' challenges to Raden's "information and belief" allegations fail.

## B.  Qualified Immunity

The Defendants contend they are entitled to qualified immunity from Raden's § 1983 claims. Qualified immunity protects government officials from suit when they perform "discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "For qualified immunity to apply, an officer 'must first establish that he acted within his discretionary authority.'" *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013)).

There is no dispute that the Defendants were acting within the scope of their discretionary authority as law enforcement officers. *See Maughon v. City of Covington*,

6

505 F. App'x 818, 822 (11th Cir. 2013) (per curiam) ("[T]here can be no doubt that [the Defendants] ha[ve] met the first prong of the discretionary authority test . . . because, when making the arrest, [they] w[ere] . . . undertaking . . . act[s] clearly within the official responsibilities of . . . police officer[s].").[7] Because there is no dispute that the Defendants acted within the scope of their discretionary authority, the burden shifts to Raden to show that qualified immunity is inappropriate. *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (citation omitted). Raden must next demonstrate that the Defendants (1) "violated [his] constitutional right[s]," and that (2) his constitutional rights "w[ere] clearly established at the time of the alleged violation"—otherwise the Defendants are entitled to qualified immunity. *See Ingram v. Kubik*, 30 F.4th 1241, 1256 (11th Cir. 2022); *see also Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019) ("To deny qualified immunity at the motion to dismiss stage, we must conclude both that the allegations in the complaint, accepted as true, establish a constitutional violation and that the constitutional violation was 'clearly established.'") (emphasis omitted) (quoting *Keating v. City of Mia.*, 598 F.3d 753, 762 (11th Cir. 2010)). The Court will analyze whether Raden plausibly alleges that Fleming violated his clearly established right to be free from excessive force before assessing Raden's failure to intervene claim against Crisp.

### 1. Excessive Force

Raden brings an excessive force claim under the Fourth and Fourteenth Amendments against Fleming. For the reasons stated below, Fleming's motion to dismiss

---

[7] The Court here, and elsewhere in this Opinion, cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

is due to be GRANTED as to Raden's Fourteenth Amendment claim and DENIED as to Raden's Fourth Amendment Claim.

### a. Fourteenth Amendment Claim

"[*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Raden alleges Fleming used excessive force "during his arrest" when Fleming "dropped [Junior's] . . . leash[,]" resulting in the canine attack. (Doc. 19 at 4–5, paras. 14, 18).

Consequently, Raden's excessive force claim is "grounded in the Fourth Amendment's prohibition on 'unreasonable searches and seizures.'" *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (quoting U.S. CONST. amend. IV); *see also Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) ("So, under the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'") (quoting *Piazza v. Jefferson County*, 923 F.3d 947, 952 (11th Cir. 2019)). Therefore, because it is undisputed that Raden's claims of excessive force relate to conduct *during his arrest*, Raden's Fourteenth Amendment excessive force claim is due to be dismissed against Fleming.

### b. Fourth Amendment Claim

To determine whether Fleming committed a constitutional violation, the Court must evaluate whether his use of force was reasonable. *Graham*, 490 U.S. at 395. Whether the

force used to effectuate Raden's arrest was reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The Court must consider whether the force applied "'[was] objectively reasonable in light of the facts confronting the officer,' a determination [this Court] make[s] 'from the perspective of a reasonable officer on the scene[,]' and not 'with the 20/20 vision of hindsight.'" *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (per curiam) (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam)). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396.

The Supreme Court has outlined several factors courts must consider when determining whether an officer used excessive force during an arrest, including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additional factors include "the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Richmond*, 47 F.4th at 1182.

### i.   Constitutional Violation

Raden argues that Fleming's "unrestrained and uncontrolled release" of Junior "with knowledge [that the canine] would attack . . . Raden" constitutes excessive force violative of the Fourth Amendment. (Doc. 19 at 7, para. 28). Viewing the facts in the light

9

most favorable to Raden, he establishes that he: (1) "voluntarily got down onto the ground on his back and put his hands up with his palms open" (*id.* at 3, para. 11); (2) did not flee from law enforcement (*id.* at 7, para. 28(b)); and (3) was bitten by Junior while submitting to the Defendants (*see id.* at 4, para. 17). Thus, Raden argues that Fleming did not need to release Junior to effectuate his arrest.

At this stage, under the facts alleged, Fleming's use of a canine unit was not objectively reasonable. The Eleventh Circuit has held "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). Viewing the facts in the light most favorable to Raden, he neither resisted arrest nor posed a danger to Fleming sufficient to warrant the use of a canine. *See id*; *see also Crenshaw*, 556 F.3d at 1293 ("[I]t would have been objectively unreasonable for [police] to allow the canine to continue attacking [the plaintiff arrestee] *after* he was secured[.]") (emphasis in original). Under Raden's version of events, he was unarmed and on the ground "with his palms open." (*See* doc. 19 at 3, para. 11). And there is no indication that Raden posed an immediate threat to the Defendants or the public. (*See id.* at 8, para. 28(e)). Thus, considering the *Graham* factors and established Eleventh Circuit precedent, Raden has identified a constitutional violation attributable to Fleming.

### ii.     Clearly Established

Having established that Raden has adequately shown a constitutional violation, the Court must determine whether his Fourth Amendment right to be free from excessive force was clearly established in June 2024 when these events occurred. *See Patel v. Lanier*

*County*, 969 F.3d 1173, 1181 (11th Cir. 2020) (citation omitted). A right is clearly established when "the state of the law at the time of the incident g[ives] [the Defendants] 'fair warning' that [their alleged] conduct was unlawful." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (citation omitted). To start, the Court must resist "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). To establish a violation of clearly established law, this Court does not "require [Raden to locate] a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Id.* at 741. "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation omitted).

> Raden can demonstrate that the law was clearly established in one of three ways:
>
> (1) case law with indistinguishable facts clearly establishing the constitutional right;
>
> (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or
>
> (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. July 11, 2025) (en banc) (quotation marks omitted). The Court first turns to Eleventh Circuit published case law concerning canine bites and excessive force to determine whether Raden's right to be free from excessive force was clearly established in June 2024. *See Priester v. City of Riviera Beach*, 208 F.3d 919 (11th Cir. 2000); *Crenshaw*, 556 F.3d 1283 (11th Cir. 2009); *Jones*

11

*v. Fransen*, 857 F.3d 843 (11th Cir. 2017); *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012).[8]

In *Priester*, the titular arrestee (Priester) was suspected of stealing approximately twenty dollars' worth of snacks from a golf shop—a minor crime. 208 F.3d at 927. The record did not suggest that Priester was armed or posed an immediate threat to law enforcement or the public. *Id.* Priester initially fled from law enforcement but, after he was discovered, he immediately submitted to them. *Id.* at 923, 927. Further, when he was "ordered . . . to get down on the ground, [Priester] complied." *Id.* at 927. Despite Priester's cooperation, law enforcement "ordered and allowed [the] dog to attack and bite [Priester] . . . for at least two minutes." *Id.* The Eleventh Circuit held that the officer violated Priester's clearly established Fourth Amendment right to be free from the use of excessive force. *Id.* at 927–28.

Rather than stealing snacks from a golf shop, the arrestee in *Crenshaw* was suspected of committing at least one—potentially two—armed robberies. 556 F.3d 1292–93. Crenshaw violently fled police and crashed his vehicle into a marked patrol car. *Id.* at 1292. After the crash, Crenshaw ran into a "densely wooded area." *Id.* Law enforcement "had every reason to believe that Crenshaw was armed and dangerous." *Id.* Although Crenshaw notified the officers of his whereabouts by yelling "I am over here[,]" the Eleventh Circuit held that the canine-controlling officer did not violate Crenshaw's Fourth

---

[8] Raden cites *Edwards* and *Priester* in support of his theory that his right to be free from excessive force was clearly established in June 2024. (*See* doc. 26 at 13; doc. 32 at 13).

Amendment right to be free from the use of excessive force for using a canine to locate and apprehend Crenshaw—a suspected armed fugitive. *Id.* at 1292–93.

*Jones* involved a "case . . . not directly on all fours with either *Priester* or *Crenshaw*." 857 F.3d at 854. Jones was suspected of stealing a television from his ex-girlfriend's residence. *Id.* Jones did not readily surrender and led law enforcement into "physically challenging terrain with brush and boulders . . . and did not respond in any way to" law enforcement's canine warnings. *Id.* Although the canine harmed Jones, the Eleventh Circuit held that *Priester* and *Crenshaw* did not provide law enforcement with "'fair' notice necessary to breach qualified immunity." *Id.*

Finally, *Edwards* held that law enforcement's decision to use a canine to "track and initially subdue [a] fleeing [suspect] was constitutional, but further conclude[d] that [law enforcement] used unconstitutionally excessive force when he permitted his dog to attack [the arrestee] for five to seven minutes." 666 F.3d at 1295. Edwards committed a minor traffic violation, stopped his car, and fled from police on foot. *Id.* at 1292–93. Edwards ran into the woods and police used a canine to locate him. *Id.* at 1293. Police issued two warnings, received no response, and entered the wooded area. *Id.* Edwards—lying on his stomach with his hands exposed—failed to "surrender when [law enforcement] allowed [the] dog to first bite Edwards's leg[.]" *Id.* at 1295. The attack lasted between five and seven minutes as Edwards begged the officers to call off the canine. *Id.* at 1293.

Considering the Eleventh Circuit's case law, the Court reviews the particularized factual scenario outlined in Raden's Operative Complaint. Viewing these facts in the light most favorable to Raden, on June 12, 2024, he was: (1) illuminated by flashlight; (2) not

13

fleeing; (3) not resisting; (4) on the ground "with the palms of his hands open and in the air"; and (5) compliant with law enforcement's commands. (*See* doc. 19 at 3–8). Raden notes that Fleming gave him no verbal warning that he intended to release Junior. (*Id.* at 4, para. 16). Raden's version of events sufficiently parallels the events described in *Priester* such that Fleming had fair warning that using a canine to effectuate an arrest in this particularized factual scenario violated the Fourth Amendment.

Under the facts alleged, Raden complied with law enforcement commands and did not resist or make threatening movements. Further, unlike *Priester*, Raden did not flee from law enforcement at the outset of his encounter with the Defendants. Raden did not lead officers to an unknown wooded area, instead he laid on the ground, in his backyard with the "palms of his hands open and in the air[.]" (*Id.* at 4, para. 13). At this stage, Raden sufficiently established a violation of clearly established law. Although slight differences exist between Raden's allegations and the facts in *Priester* (specifically, how long the bite lasted), the law does not "require [Raden to locate] a case directly on point, [and] existing precedent . . . place[s] the . . . constitutional question beyond debate."[9] *al-Kidd*, 563 U.S. at 741. Because Fleming had fair warning that using Junior to effectuate Raden's arrest violated the Constitution, he is not entitled to qualified immunity at this stage.[10]

---

[9] Even if prior case law—*Priester*—did not provide Fleming "fair warning" that his conduct, at this stage was unconstitutional, the Court finds that "a reasonable officer would not need prior case law to know that releasing a canine onto an unarmed, nonthreatening, non-fleeing, . . . compliant arrestee constitutes excessive force." *See Nelson v. Wilson*, 2025 WL 1919486, at *6 (M.D. Ala. July 11, 2025).

[10] Raden alleges that the Defendants wore "body cam[era]s that captured the details of this encounter." (Doc. 19 at 3, para. 7). The Court has not reviewed any purported video footage of Raden's arrest.

## 2. Failure to Intervene[11]

Raden alleges that Crisp "acted objectively unreasonable and with deliberate indifference by failing to intervene as . . . Raden was brutally and unlawfully attacked by the police dog." (Doc. 19 at 9–10, para. 34). Raden claims that "Crisp was present and also standing [ten to fifteen] feet away from . . . Raden when . . . Fleming released [Junior][.]" (*Id.* at 10, para. 35). Therefore, according to Raden's Operative Complaint, "Crisp observed and was in a position to intervene to stop . . . Fleming's" use of force. (*Id.* at 10, para. 37).

Police officers "can be liable for failing to intervene when another officer uses excessive force." *Priester*, 208 F.3d at 924. "The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades." *Helm v. Rainbow City*, 989 F.3d 1265, 1272 (11th Cir. 2021) (citing *Priester*, 208 F.3d at 927). "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester*, 208 F.3d at 924.

---

[11] Raden styles his claim against Crisp as "deliberate indifference / failure to intervene." (Doc. 19 at 9). "Deliberate indifference" is ordinarily analyzed under the Eighth Amendment's framework. *See Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc). Raden repeatedly alleges that Crisp: (1) "fail[ed] to intervene" (doc. 19 at 10, para. 34); (2) "had a duty to intervene" (*id.* at 10, para. 35); and (3) "observed and was in a position to intervene" (*id.* at 10, para. 37). Because Raden's Count II allegations mirror a traditional failure to intervene claim, the Court pretermits discussion on Raden's invocation of "deliberate indifference."

15

Here, Raden alleges that "Crisp made a hushed comment" to Fleming, who then dropped Junior's leash. (Doc. 19 at 4, para. 14). Raden claims Crisp was in a position to intervene because he was standing within ten to fifteen feet of Raden during the attack. (*Id.* at 10, para. 35). Although Raden claims Junior attacked him twice, he does not allege how long the biting incident occurred. (*Id.* at 4–5, para. 17). Raden also notes that Fleming released Junior "without . . . warning." (*Id.* at 4, para. 16).

Although Raden alleges facts sufficient to establish Crisp's presence at the scene, he fails to establish that Crisp was *in a position* to intervene. Without knowing how long the incident lasted, the Court is left to guess whether Crisp could have intervened.[12] Unlike Raden's claim against Fleming, *Priester* undercuts his claim against Crisp. In *Priester*, the Eleventh Circuit held that an officer was in a position to intervene when a canine attack lasted *two minutes* and was preceded by a verbal warning. 208 F.3d at 927. That Court specifically noted that the officer "observed the entire attack and had the *time* and ability to intervene, but he did nothing." *Id.* (emphasis added). Thus, on these facts, Raden has not shown a violation of a clearly established right. Therefore, even viewing the facts in the light most favorable to Raden, Crisp's presence at the scene is insufficient to overcome qualified immunity as to Crisp's failure to intervene.

---

[12] In response to Crisp's motion to dismiss, Raden describes the events as occurring "over a *prolonged* period, giving Crisp ample opportunity to stop or prevent the attack." (Doc. 26 at 15) (emphasis added). Crisp does not allege how long the attack lasted in his Operative Complaint. Rather, he simply states that Junior bit him twice. (Doc. 19 at 4–5, para. 17). Raden cannot amend his Operative Complaint in response to a motion to dismiss. *See Equal Emp. Opportunity Comm'n v. Lab. Sols. of AL LLC*, 242 F. Supp. 3d 1267, 1284 (N.D. Ala. 2017).

## VI. CONCLUSION

For the reasons stated, it is hereby ORDERED as follows:

1.Defendant Fleming's motion to dismiss (doc. 29) is GRANTED as to Raden's Fourteenth Amendment claim and DENIED as to Raden's Fourth Amendment excessive force claim (Count I).

2.Defendant Crisp's motion to dismiss (doc. 23) is GRANTED as to Raden's failure to intervene claim (Count II).

3.Defendant Crisp is dismissed as a party to this action.

4.This case shall proceed on the Fourth Amendment excessive force claim against Defendant Fleming.

DONE this 19th day of September, 2025.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE